## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DEEPHAVEN CAPITAL<br>MANAGEMENT, LLC, | Civil No. 06-844 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION<br>AND ORDER GRANTING<br>MOTION TO DISMISS** |
| ROBERT SCHNELL, | |
| Defendant. | |

J David Jackson and I. Jenny Winkler, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498, for plaintiff.

James F. Roegge, Bradley J. Lindeman, and Eric E. Holman, **MEAGHER & GEER PLLP**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for defendant.

Plaintiff Deephaven Capital Management, LLC ("Deephaven") is a provider of investment management services. Defendant Schnell is a former portfolio manager for Deephaven. Deephaven brought this action against Schnell seeking indemnity, lost opportunity damages, and lost management fees, alleging that Schnell's trading activities violated federal securities laws. Schnell now moves to dismiss this action for failure to state a claim. For the reasons set forth below, the Court grants Schnell's motion in its entirety.

## BACKGROUND

Plaintiff Deephaven is a Delaware limited liability company with its principal place of business in Minnetonka, Minnesota. Deephaven provides investment management services to private pooled investment vehicles, or "funds." Defendant Schnell worked as a portfolio manager for Deephaven from July 2001 until January 2006. As a Deephaven portfolio manager, Schnell had discretion to conduct investment and trading activity on behalf of Deephaven's "Long/Short Fund" and "Relative Value Fund" (the "Fund" or "Funds"), subject to the investment goals of the Funds, company directives and rules, and applicable securities laws and regulations.

According to Deephaven, Schnell purchased registered shares of public issuers that resulted in each Fund being deemed a "beneficial owner" of those public issuer's securities.[1] *See* 15 U.S.C. § 78p(a). As beneficial owners, the Funds became subject to the "short swing profit rule" of section 16(b) of the Securities and Exchange Act. Section 16(b) prohibits the sale of such securities within six months of their purchase. *See id.* § 78p(b). Deephaven alleges that Schnell's trading activity on behalf of the two Funds caused the Funds to violate section 16(b).

As a result of these violations, Deephaven was required to disgorge short-swing profits in certain specific investment portfolios resulting from Schnell's illegal trades. According to Deephaven, the total amount of disgorged profits will be in excess of $75,000. Additionally, Deephaven alleges that Schnell mismanaged the Funds, causing

---

[1] Under section 16(a) of the Securities and Exchange Act of 1934, a "beneficial owner" is any owner "of more than 10 percent of any class of any equity security." 15 U.S.C. § 78p(a)(1).

substantial losses to the Funds and the subsequent withdrawal of major investors. Deephaven filed this action seeking indemnity from Schnell for Deephaven's disgorged profits resulting from the section 16(b) violations.  In addition, Deephaven seeks lost opportunity damages and lost management fees.  On August 8, 2006, Schnell filed this motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6).

## ANALYSIS

### I.   STANDARD OF REVIEW

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, as the non-moving party.  *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001).  A motion to dismiss a complaint should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief.  *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

### II.   DEEPHAVEN'S CLAIM FOR INDEMNIFICATION

Schnell argues that Deephaven is not entitled to seek indemnification under section 16(b) as a matter of law.  Deephaven responds that it may seek indemnification from Schnell under section 16(b) if the violations resulted without any fault on the part of Deephaven.  Deephaven argues that because it was not at fault, Schnell's motion to dismiss must be denied.

Indemnity shifts the entire loss from "one culpable wrongdoer to another." *Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 362, 367 (Minn. 1977); *Guillard v. Niagara Machine & Tool Works*, 488 F.2d 20, 23 (8th Cir. 1973). In other words, "indemnity allows a wrongdoer to completely evade liability." *DS Bond Fund, Inc. v. Gleacher NatWest Inc.*, 2001 WL 1168809, at *6 (D. Minn. May 1, 2001). Where federal securities laws provide no express right of indemnification, courts generally inquire whether the securities laws provide for an implied right of indemnity. *See, e.g.*, *In re Prof. Financial Mgmt, Ltd.*, 683 F. Supp. 1283, 1285-86 (D. Minn. 1988) (finding no express right to indemnity under section 10(b) and inquiring whether an implied right to indemnity exists under that provision). Section 16(b) provides no express right of indemnification to a party found liable under section 16(b). The Court must therefore determine as an initial matter whether a right to indemnity may be implied under section 16(b).

The Eighth Circuit has not specifically addressed whether a party found liable under section 16(b) may seek indemnity against another party. However, federal courts in Minnesota have addressed more generally whether a party has an implied right to indemnity under the federal securities laws. In *Gleacher NatWest*, for example, the district court rejected an indemnity claim by a party found to have engaged in securities fraud under Rule 10b-5, stating that "'a securities wrongdoer should not be permitted to escape loss by shifting his entire responsibility to another party.'" *Gleacher NatWest*, WL 1168809, at *6 (quoting *Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979)). In so finding, the court held that "no implied right to indemnity is available under the

federal securities laws." *Id.*; *see also In re Prof. Financial Mgmt, Ltd.*, 683 F. Supp. at 1285-86 (rejecting an implied right to indemnity or contribution for a party found to have violated section 10(b) and Rule 10b-5).

As in the Eighth Circuit, most circuits that have examined the availability of indemnity under the securities laws have not addressed indemnity under section 16(b) specifically.[2]   Schnell nonetheless characterizes case law from other circuits as establishing a majority rule barring indemnity for violations of the federal securities laws. However, only the Seventh Circuit appears to have established a blanket rule excluding implied indemnity claims under all federal securities laws. *See Heizer*, 601 F.2d at 334 (stating that the securities laws "do not provide anywhere for indemnification under any circumstances").

Deephaven responds that other circuits have barred indemnity claims under federal securities laws only where the party seeking indemnity was at fault. *See, e.g.*, *Fromer v. Yogel*, 50 F. Supp.2d 227, 238 (S.D.N.Y. 1999) (noting that in the Second Circuit "indemnity claims under the Securities and Exchange Act may proceed where the wrong committed by those seeking indemnity is not greater than ordinary negligence"). Although other circuits have allowed indemnity where the party seeking indemnification is not at fault or is merely negligent, those cases focus on fault or negligence precisely because they involve intent-based laws or regulations, such as Rule 10b-5. *See Gould v.*

---

[2] *See, e.g.*, *Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1287-88 (2d Cir. 1989) (addressing indemnity for Rule 10b-5 violators); *Heizer*, 601 F.2d at 334 (same); *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1104 (4th Cir. 1989) (addressing indemnity and contribution for violators of section 12(2)).

*American-Hawaiian S.S. Co.*, 387 F. Supp. 163, 166-67 (D. Del. 1974) (stating that "[t]his indemnification doctrine, however, was developed in § 10(b) and § 17(a) cases, where the gravamen of the wrongdoing is fraudulent and intentional conduct").  Given the overriding deterrent purpose of the Securities and Exchange Act, imposing liability on a party that claimed it did not act with the requisite scienter under Rule 10b-5 would do little to deter intentional conduct.  Courts have therefore suggested that a Rule 10b-5 defendant that alleges "no fault" should be allowed to seek indemnity against the true violator of the rule.  *See, e.g.*, *Greenwald v. Am. Medcare Corp.*, 666 F. Supp. 489, 493-94 (S.D.N.Y. 1987).

Unlike other provisions of the securities laws, however, section 16(b) is a strict liability provision.  As such, questions of fault or negligence are irrelevant.  *See First Golden Bancorp. v. Weiszmann*, 942 F.2d 726, 729 (10th Cir. 1991) (noting that the policy behind section 16(b) was to "deter transactions which have a high potential for fraud" and that "Congress determined that it was not practical to require proof of improper intent or scienter in cases of insider trading").  Thus, whereas deterrence might be undermined by, for example, enforcing Rule 10b-5 against a party not at fault, Congress concluded that insider trading was best deterred under section 16(b) by imposing strict liability regardless of fault.  Several courts have therefore suggested that indemnity is inappropriate in the context of section 16(b)'s strict liability provisions.  *See Schaffer v. CC Inv. LDC*, 286 F. Supp. 2d 279, 283 (S.D.N.Y. 2003) (stating that "allowing indemnification for section 16(b) violations would frustrate the public policy behind the statute because liable parties would not have to return their short-swing profits

to the plaintiff issuer"); *Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc.*, 639 F. Supp. 409, 419 (D. Md. 1986) (refusing to enforce an indemnification agreement for section 16(b) violations as against public policy).  The Court is persuaded by the reasoning in this line of cases and holds that indemnity for section 16(b) violations would undermine the deterrent purpose of section 16(b) by allowing a wrongdoer to recoup its disgorged profits.

The Court concludes that Deephaven is not entitled to seek indemnity for profits disgorged as a result of the Funds' violations of section 16(b)'s short-swing profit rule. Counsel for Deephaven asserted at oral argument that the individual Funds were the beneficial owners in violation of section 16(b), and that Deephaven voluntarily disgorged profits to the issuers on behalf of the Funds.  As such, Deephaven argues that it is not a wrongdoer and therefore should be entitled to indemnity from Schnell.  The Court has found no case law addressing this precise question.  In such a case, however, the entity's disgorgement of profits would enable the investment fund to retain illegal profits by shifting the loss from the fund to the disgorging entity.  Allowing the entity to then seek indemnity from a third party would undermine the policy of deterrence because the entity would effectively recoup its disgorged profits from the third party.  In short, neither the fund nor the entity would have to return the short-swing profits to the issuer.  The Court thus finds that the same policy rationale that prevents a section 16(b) violator from claiming indemnity also bars indemnity for an entity that voluntarily disgorges profits on behalf of its investment funds.  Accordingly, Schnell's motion to dismiss with respect to Deephaven's claim for indemnity is granted.

III.   **DEEPHAVEN'S CLAIM FOR LOST OPPORTUNITY DAMAGES**

Deephaven seeks lost opportunity damages resulting from Schnell's improper trading of the funds.   Deephaven's theory of relief is that "had [Scnhell] acted consistently with section 16(b) and Plaintiff's policy, the Funds . . . would have had more capital available to invest in other equity securities."  (Pl.'s Mem. Of Law in Opp'n, at 3.) However, Deephaven has failed to identify any specific legal theory, other than indemnity, that would entitle it to relief for lost opportunity damages.   Deephaven's Complaint alleges only that "Schnell is liable to Deephaven for the lost opportunity damages he has caused Deephaven to suffer."  (Pl.'s Compl. ¶ 28.)  Because Deephaven seeks further damages from Schnell under a theory of indemnity, its claim for lost opportunity damages must be dismissed.

IV.   **DEEPHAVEN'S CLAIM FOR LOSS OF MANAGEMENT FEES**

Deephaven also seeks lost management fees from Schnell resulting from investors' withdrawal of significant assets from the Funds.   Deephaven alleges that Schnell's mismanagement of the Funds caused the withdrawal of assets under Deephaven's management of approximately $100 million.   As above, Deephaven's Complaint fails to identify a specific legal theory that entitles it to relief for the loss of management fees.   However, Deephaven's claim appears to be based on Minnesota common law of indemnity.   *See Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, 418 N.W.2d 488, 490 (Minn. 1988) (stating that a "principal is entitled to recover indemnity from its agent for the principal's liability which is due

solely to the torts of the agent").  In the absence of an independent jurisdictional basis, the Court declines to exercise supplemental jurisdiction over Deephaven's state law claim.  28 U.S.C § 1367(c).  Accordingly, Schnell's motion to dismiss with respect to this claim is granted.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendant Schnell's motion to dismiss [Docket No. 12] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   January 5, 2007                                    s/ John R. Tunheim
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                                   United States District Judge